IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 1, 2020

**STATE OF TENNESSEE v. ROBERT GLEN GRAY**

**Appeal from the Circuit Court for McNairy County**
**No. 3986       J. Weber McGraw, Judge**

_____

**No. W2019-01806-CCA-R3-CD**

_____

A McNairy County jury convicted the Defendant, Robert Glen Gray, of two counts of delivery of methamphetamine weighing .5 grams or more. The trial court sentenced the Defendant to a total effective sentence of twenty-five years. On appeal, the Defendant contends that the evidence is insufficient to support his convictions. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Jamie L. Lowrance, Selmer, Tennessee, for the appellant, Robert Glen Gray.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Lisa M. Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

This case arises from two controlled purchases of methamphetamine by a confidential informant ("CI") from the Defendant. For these events, a McNairy County grand jury indicted the Defendant for two counts of delivery of methamphetamine weighing .5 grams or more.

**A. Trial**

The following evidence was presented at the Defendant's trial on these charges:

The CI testified that she was a confidential informant for the McNairy County Sheriff's Office Drug Task Force and had made two purchases of methamphetamine from the Defendant, whom she had known all her life. On the day before her first purchase, the CI "lined up" her purchase with the Defendant. On the day of the first purchase, May 25, 2018, the CI met with agents from the Drug Task Force, who searched the CI's person and vehicle, attached a recording device to her person, and arranged the details of the controlled purchase. The agent gave the CI a one hundred dollar bill to make the purchase. The CI left the meeting and went to the Defendant's residence and asked the Defendant if he could get her $100 worth of "methamphetamines or ice." The Defendant told her that he would make a telephone call and let her know whether he could get the drugs she had requested. Shortly after, a man drove into the Defendant's driveway, and the Defendant told the CI "that was him" and she gave the Defendant the money and "come to find out we had to go over to the man, Mr. Lawson Price's residence, to get the drugs."

The CI gave the money to the Defendant and then together they rode in the Defendant's truck to Lawson Price's house. The CI provided Mr. Price's residence's location. Inside Mr. Price's residence, the CI and the Defendant went into the back bedroom where Mr. Price weighed the drugs. The CI recalled that Mr. Price's house was very dirty with lots of animals inside. The CI clarified that Mr. Price weighed the drugs on his scale and then handed them to the Defendant who then passed them to the CI. The CI described the methamphetamine as being like "rock salt" inside a bag. The CI drove the Defendant back to his residence and then she met with the Drug Task Force Agents and handed them the drugs. They searched her person and her vehicle, and the CI provided a statement of what had occurred. The task force agents paid the CI eighty dollars to conduct this controlled purchase.

The recording of the May 25 transaction was played for the jury and entered as an exhibit. The CI identified hers and the Defendant's voices on the recording and reiterated that he was the person to whom she gave the money and from whom she received methamphetamine in return.

The CI testified that she purchased methamphetamine from the Defendant a second time on June 28, 2018. Agents provided the CI with money to purchase methamphetamine from the Defendant. The transaction occurred similarly to the first, at Mr. Price's residence, and was also recorded.

On cross-examination, the CI agreed that she was using drugs during the time she made these two purchases from the Defendant. She arranged to make the purchases via the internet. The Defendant sold her a "sixteenth" in exchange for one hundred dollars on both occasions.

Rachel Strandquist testified that she was employed by the Tennessee Bureau of Investigation ("TBI") as a forensic scientist in the chemistry unit. The trial court admitted Agent Strandquist as an expert in the field of chemistry and narcotics analysis. She testified that she tested the drugs purchased from the Defendant: one sample weighed .63 grams and the other weighed 1.22 grams. Testing showed that both samples were methamphetamine.

On cross-examination, Agent Strandquist agreed that she had no knowledge of who possessed the drugs before they came to her for testing and that she could not explain why each sample was purchased for the same amount of money considering their difference in weight. On redirect-examination, she agreed that either of the samples could have contained rock salt mixed in with the methamphetamine.

Investigator J.P. Kellum testified that he was a member of the McNairy County Sheriff's Office Narcotics Unit and that he facilitated the controlled drug purchases between the CI and the Defendant. He testified consistently with the CI's version of the events related to both purchases. During both drug transactions, Investigator Kellum monitored the audio recording.

On cross-examination, Investigator Kellum agreed that, other than what he heard on the audio of the purchases, he had to rely on what the CI reported to him about who gave her the drugs and took the money. He agreed that he did not know whether the CI had turned off the audio recording during the purchases.

Officer Kim Holley and Investigator Matt Rickman, both employed by the Selmer Police Department and members of the McNairy County Narcotics Unit, each testified that they were present during one of the two drug purchases and testified to what transpired during each purchase; their testimony was consistent with the CI's testimony.

Based on this evidence, the jury convicted the Defendant of two counts of delivery of methamphetamine weighing more than .5 grams. The trial court subsequently held a sentencing hearing and, based on the Defendant's extensive history of drug convictions, imposed enhanced sentences of twenty-five years for each conviction, to be served concurrently in the Tennessee Department of Correction. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to support his convictions because they were based "almost entirely" on circumstantial evidence, and that "no credible evidence" was presented that the June 28 transaction occurred. The

Defendant concedes that the evidence presented of the May 25 transaction "reach[es] a higher threshold" than the evidence of the June 28 purchases, but he maintains that neither transaction was supported by sufficient evidence. The State responds that the evidence presented provided both direct and circumstantial evidence of the Defendant's crimes and was sufficient to support his convictions beyond a reasonable doubt. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their

4

demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted). This standard is identical whether the conviction is predicated on direct or circumstantial evidence. *State v. Casper*, 297 S.W.3d 676, 683 (Tenn. 2009); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977). In the absence of direct evidence, a criminal offense may be established entirely by circumstantial evidence. *State v Majors*, 318 S.W.3d 850, 857 (Tenn. 2010) (citing *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973); *Marable v. State*, 313 S.W.2d 451, 456-58 (1958)).

Tennessee Code Annotated section 39-17-434 provides, in pertinent part, that it is an offense for a defendant to knowingly deliver methamphetamine. Methamphetamine is a Schedule II controlled substance. T.C.A. § 39-17-408 (b)(4)(2018). The statutory definition of delivery is: the actual, constructive, or attempted transfer from one person to another. *See* T.C.A. § 39-17-402(6)(2018).

The Defendant argues that the State presented circumstantial evidence that he delivered methamphetamine and that such evidence failed to exclude every other reasonable hypothesis save his guilt; however, the record before this court contains substantial direct evidence that the Defendant delivered methamphetamine to the CI. On two separate dates, the CI arranged to meet the Defendant, whom she knew well. She had "arranged" with the Defendant to purchase methamphetamine from him and so, on both occasions, the CI drove to meet the Defendant, who accompanied her to another man's residence, from whom they would procure the drugs. Upon arrival at the residence, the CI gave the Defendant one hundred dollars, and the Defendant gave her methamphetamine in rock form in return. The TBI tested both samples and found the samples to be methamphetamine weighing more than 0.5 grams. The CI testified that she gave the money to the Defendant and received the drugs from him; this was verified by the audio recording. The CI's testimony about the sale of the methamphetamine and the Defendant's involvement is direct evidence of his guilt, supported by the audio and video

recordings of the transactions.

The Defendant's assertion that because his convictions were based in part upon circumstantial evidence, the State was required to rule out every reasonable hypothesis except that of guilt is simply no longer the law in Tennessee. Instead, circumstantial evidence alone is sufficient to sustain a conviction and is treated the same as direct evidence when weighing the sufficiency of the evidence. *See Dorantes*, 331 S.W.3d at 381. The *Dorantes* standard recognizes that the trier of fact is in a better position than this court to weigh the evidence and decide between the competing plausible theories presented by the State and a defendant. Accordingly, this court's duty on appeal is "not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." *State v. Sisk*, 343 S.W.3d 60, 67 (Tenn. 2011).

Accordingly, we conclude that the evidence is sufficient for a rational trier of fact to find the Defendant is guilty of two instances of the delivery of methamphetamine. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

6